**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 22 B 5968 |
| | ) | |
| SHAWN P. COOKE, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | Judge David D. Cleary |

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Shawn P. Cooke ("Cooke" or

"Debtor") to modify his confirmed chapter 13 plan ("Motion to Modify").  The chapter 13

Trustee ("Trustee") filed a notice of objection to the Motion to Modify.  Although she did not

file a written response, the Trustee stated in court that she objected to the Motion to Modify

based on the reasoning of *In re Nolan*, 232 F.3d 528 (6th Cir. 2000).  The court then took the

Motion to Modify under advisement.  Having reviewed the papers and heard the arguments of

the parties, the court will grant the Motion to Modify.

## I.       JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334 and the district court's

Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B),

(L) and (O). Venue is proper under 28 U.S.C. § 1409(a).

## II.      BACKGROUND

### A. Debtor's bankruptcy case and confirmation of his plan

Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on

May 25, 2022.  On Schedule B, he listed a 2015 Chevrolet Malibu ("2015 Malibu"), valuing it at

$9,520.00.  He listed Car Finance Capital ("Finance") on Schedule D with a claim in the amount

of $11,827.11, secured by the 2015 Malibu.

Debtor filed a plan ("Original Plan") on the same date as his petition.  He proposed to treat Finance's claim in section 3.2, which provides for "valuation of security, payment of fully secured claims, and modification of undersecured claims."  Debtor estimated the amount of Finance's claim at $11,827.11 and valued the 2015 Malibu at $9,520.00.  When asked in the Original Plan to describe the amount of Finance's secured claim, he stated that it is $9,520.00, the same as the value of its collateral.  At a proposed interest rate of 5.50%, the estimated total of payments to Finance under the Original Plan would be $10,911.00.

The form language of section 3.2 provides that "[t]he portion of any allowed claim that exceeds the amount of the secured claim will be treated as an unsecured claim under Part 5 of this plan….  Unless otherwise ordered by the court, the amount of the creditor's total claim listed on the proof of claim controls over any contrary amounts listed in this paragraph."

In section 5.1 of the Original Plan, Debtor proposed to pay unsecured claims 10 cents on the dollar, for a total estimated payment to all unsecured creditors of $2,325.48.

Finance filed its proof of claim on July 29, 2022, asserting a claim in the amount of $11,907.93,[1] slightly higher than the amount proposed in Debtor's Original Plan.  Question 9 on the proof of claim form asks whether all or part of the claim is secured.  Finance checked yes, stating that its claim is secured by a lien on property.  It valued that property at $9,525.00, which is five dollars higher than the amount Debtor valued it at in Schedule B and in section 3.2 of the Original Plan.  In its proof of claim, therefore, Finance asserted a secured claim in the amount of $9,525.00 and an unsecured claim in the amount of $2,382.93.

Less than a week after Finance filed its proof of claim, Debtor filed an amended plan ("Amended Plan").  He made two changes to Finance's treatment in section 3.2.  First, he

---

[1] The Motion to Modify states that "Car Finance filed a secured claim for $26,001.88[.]" (Motion to Modify, ¶ 4.) This is wrong.

2

increased his estimate of the amount of Finance's claim to match the amount in the filed proof of claim, $11,907.93. The proposed monthly payment to Finance increased slightly as well, from $181.85 to $183.00. Debtor did not adjust the value of the collateral, which remained at $9,520.00.[2]

On September 19, 2022, the court confirmed the Amended Plan.

### B. Subsequent events require modification of the plan

Less than a year after the court confirmed the Amended Plan, Debtor filed a motion to obtain credit and incur debt ("Credit Motion"). According to the Credit Motion, supported by a case incident report from the Chicago Police Department, the 2015 Malibu was stolen on June 2, 2023. In the Credit Motion, Debtor asked the court for permission to finance the purchase of a 2020 Jeep Cherokee. In support of the Credit Motion, Debtor filed an amended Schedule I and J.

The Trustee filed a notice of objection to the Credit Motion.

### C. Debtor moves to modify his plan

Around the same time that he filed the Credit Motion, Debtor filed the Motion to Modify. He alleged that someone attempted to steal the 2015 Malibu, resulting in significant damage. "Due to the Debtor['s] inability to afford the repairs and maintain her [sic] plan payments at the same time[,] the Debtor requests pursuant to § 1329 to surrender the vehicle back to CAR FINANCE and modify its secured claim to zero and reclassify its secured claim as unsecured." (Motion to Modify, ¶ 8.)

In the Motion to Modify, Debtor acknowledged the "split in the courts on whether § 1329 allows the modification of a confirmed Chapter 13 Plan to surrender a vehicle and reclassify it as

---

[2] The Motion to Modify states that the Amended Plan "provided CAR FINANCE in Section 3.2 a secured claim of $11,907.93[.]" (Motion to Modify, ¶ 5.) This is wrong. $11,907.93 is the *total* amount of the claim in section 3.2. The *secured* claim is equal to the value of the collateral, which is $9,520.00. The remaining balance of the total claim is an unsecured claim.

unsecured." (*Id.*, ¶ 9.)  He cited over a dozen cases in support of his position that the requested

modification was permissible.  Debtor also conceded that numerous courts, including two

published decisions in this district, have held that a chapter 13 plan may not be modified to

change the treatment of a secured creditor from a stream of payments to surrender of collateral.

The Trustee filed a notice of objection to the Motion to Modify.

The court heard both the Credit Motion and the Motion to Modify on August 7, 2023.

The Trustee verbally objected to both motions, arguing that the details alleged in each motion

were confusing.  Debtor budgeted for car insurance on Schedule J, but neither motion contained

a reference to insurance proceeds, and she sought more information regarding whether the 2015

Malibu was damaged or stolen.  Debtor's attorney indicated that the vehicle was not drivable,

and that the police had towed it but could not locate it.  Debtor's insurance had lapsed, so no

proceeds were available.  Counsel requested time to work with the Trustee.  The Trustee stated

that her office's position is that a plan cannot be modified to change a secured creditor's

treatment from payment of the claim to surrender of the collateral, unless that creditor

affirmatively accepts the change, relying on *In re Nolan*, 232 F.3d 528 (6th Cir. 2000).  She

asked Debtor to confirm whether Finance objected to the requested relief.  The court continued

status on both motions to clarify the facts as well as to determine Finance's position.

After the initial hearing, Debtor filed two exhibits on the case docket: (1) a full copy of

the police report; and (2) an affidavit regarding the circumstances of the car's disappearance.

Two weeks later at the continued hearing on August 21, 2023, Trustee acknowledged that

the affidavit resolved her factual questions.  She had no further objection to the Credit Motion,

which the court granted.

As for the Motion to Modify, Debtor's attorney indicated that in addition to the notice provided when the motion was filed, she also emailed Finance at the address provided on its proof of claim. The only response she received from Finance was a request for information regarding Debtor's insurance. Finance did not file a notice of objection or a response to the Motion to Modify, and it did not appear at either the original or the continued court hearings.

The Trustee maintained her objection to the relief sought in the Motion to Modify. She urged the court to follow *Nolan*, and to hold that modification of a confirmed plan that changes the treatment of a secured creditor should not be allowed. The Trustee declined the court's invitation to file a written response, and stood on her verbal objection. The court then took the Motion to Modify under advisement.

## III.   DISCUSSION

The Bankruptcy Code provides chapter 13 debtors the opportunity to repay their debts and obtain a discharge, all while retaining their possessions, such as homes and automobiles. The path toward confirmation requires the chapter 13 debtor to propose a plan that pays his debts. "Unlike a Chapter 7 petition, which focuses on liquidating the debtor's assets to satisfy his creditors, Chapter 13 allows a debtor to voluntarily propose a plan to reorganize his debts for repayment out of his future income." *Matter of Lisse*, 921 F.3d 629, 638 (7th Cir. 2019).

Unless the plan is included with the notice of the hearing on confirmation mailed under Rule 2002, the chapter 13 debtor serves the plan on the trustee and all creditors when it is filed with the court. Fed. R. Bankr. P. 3015(d). After notice and an opportunity to object, the plan may be confirmed by the court. If confirmed, it becomes a binding contract among the parties. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor[.]"); *Bullard v. Blue Hills Bank*, 575 U.S. 496, 502 (2015) ("When the bankruptcy court

5

confirms a plan, its terms become binding on debtor and creditor alike.”); *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000) (“a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors”).

A chapter 13 plan nearly always requires payment over a period between three and five years. *See* 11 U.S.C. § 1322(d). Recognizing that life events can negatively affect a debtor's financial situation over that timeframe, the Bankruptcy Code provides a mechanism for the debtor to modify his plan. *See* 11 U.S.C. § 1329.[3] This exception from the otherwise binding effect of a confirmed plan allows a debtor to adjust the plan's terms to accommodate his new situation.

Section 1329(a) specifies four types of permitted modifications. *See Germeraad v. Powers*, 826 F.3d 962, 970 (7th Cir. 2016) (“modification is allowed only if it will modify the plan in one of the ways specified in § 1329(a)(1)–(4)”). If the proposed modification is one of the types permitted by § 1329(a), and the requirements of § 1329(b) are met, then the court has broad discretion on whether to grant the motion to modify the plan. *See Matter of Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994) (modification is discretionary).

The question before the court is whether Debtor's proposed modification falls within the four types of modifications permitted under § 1329(a).

**A. Section 1329 – modification of plan after confirmation**

Section 1329 allows a debtor to modify the terms of a confirmed plan to:

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

---

[3] Section 1329(a) also contemplates that the chapter 13 trustee or the holder of an allowed unsecured claim may seek modification of a plan after confirmation. After all, a debtor's circumstances may change for the better.

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) if the debtor documents the cost of such insurance and demonstrates that--

> (A) such expenses are reasonable and necessary;
>
> (B)   (i) if the debtor previously paid for health insurance, the amount is not materially larger than the cost the debtor previously paid or the cost necessary to maintain the lapsed policy; or
>
>> (ii) if the debtor did not have health insurance, the amount is not materially larger than the reasonable cost that would be incurred by a debtor who purchases health insurance, who has similar income, expenses, age, and health status, and who lives in the same geographical location with the same number of dependents who do not otherwise have health insurance coverage; and
>
> (C) the amount is not otherwise allowed for purposes of determining disposable income under section 1325(b) of this title;

and upon request of any party in interest, files proof that a health insurance policy was purchased.

11 U.S.C. § 1329(a).

The proposed plan, containing a permitted modification, must also satisfy "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a)" of title 11. 11 U.S.C. § 1329(b)(1). Therefore, if the proposed modification qualifies as one of the four permitted modifications in § 1329(a) and the plan satisfies the requirements in § 1329(b)(1), the court may approve it.

Proper service of the proposed modification must be made in compliance with Fed. R. Bankr. P. 3015(h):

> A request to modify a plan under … § 1329 of the Code shall identify the proponent and shall be filed together with the proposed modification. The clerk, or some other person as the court may direct, shall give the debtor, the trustee, and

all creditors not less than 21 days' notice by mail of the time fixed for filing
objections and, if an objection is filed, the hearing to consider the proposed
modification…. A copy of the proposed modification, or a summary thereof,
shall be included with the notice. Any objection to the proposed modification
shall be filed and served on the debtor, the trustee, and any other entity designated
by the court, and shall be transmitted to the United States trustee. An objection to
a proposed modification is governed by Rule 9014.

The notice requirements when an entity asks the court to reconsider a claim are less onerous. To the extent a movant seeks reconsideration of the allowance of a claim, the court will enter an appropriate order "after a hearing on notice." Fed. R. Bankr. P. 3008.

With appropriate notice, the court may *confirm* a plan without conducting an evidentiary hearing. When a creditor receives notice of the filing and contents of a debtor's plan, its due process rights are satisfied. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). "If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Fed. R. Bankr. P. 3015(f). There is no voting and affirmative consent is not required.

Similarly, if no objection is filed to a proposed *modification*, "the court is not required to hold a hearing." Fed. R. Bankr. P. 3015, Advisory Committee Notes to 1993 Amendments. In that event, "[t]he plan as modified becomes the plan[.]" 11 U.S.C. § 1329(b)(2).

## B. The Debtor's proposed modification is permitted under § 1329

Here, Debtor seeks to modify his plan to surrender the 2015 Malibu to Finance. The modified plan would reduce remaining payments to Finance on its secured claim to $0 after accounting for the surrendered vehicle, and reclassify the remaining deficiency claim as unsecured. Debtor provided the Trustee, Finance and all of his creditors more than 21 days' notice of the Motion to Modify, as required by Fed. R. Bankr. P. 3015(h).

Additionally, following the initial hearing on the Motion to Modify, Debtor's counsel emailed Finance at the address provided on its proof of claim. The only response that counsel

8

received was a request for information regarding Debtor's insurance.  Finance did not file a notice of objection to the Motion to Modify, and it did not appear at either the original or the continued court hearings.

The Trustee presented her objections verbally, in court.  She took the position that the Debtor may not modify his plan to surrender the 2015 Malibu without Finance's affirmative consent.  The basis of her position is that under *Nolan*, a plan cannot be modified to change a secured creditor's treatment from payment of the claim to surrender of the collateral, unless that creditor accepts the change.  In this case, although Finance has not opposed the Motion to Modify, neither has it affirmatively consented to the relief sought.

Debtor contends that *Nolan* is the minority view.  The majority view holds that modification of a plan to surrender a vehicle is a permitted type of modification under both § 1329(a)(1) and (a)(3).  It is further supported by § 1322(b)(8) and § 1325(a)(5)(C).  Therefore, *Nolan* misconstrues the Bankruptcy Code.  Debtor urges the court to follow the majority position.

1.  **Section 1329(a) permits surrender as a plan modification**

    a.  **11 U.S.C. § 1329(a)(1)**

Section 1329(a) describes the four permitted modifications of a confirmed plan.  A modification that will "increase or reduce the amount of payments on claims of a particular class provided for by the plan" is one of those four permitted modifications, pursuant to the express language of § 1329(a)(1).

Secured creditors are treated in Part 3 of Official Form 113, the national form chapter 13 plan used in this district.  Each secured creditor is in its own class, provided with unique rights in its collateral.  Therefore, a reduction in the amount of payments to one or more secured creditors

9

is a permitted modification under § 1329(a)(1).  A chapter 13 debtor who proposes a plan

modification that would surrender a secured creditor's collateral is not changing the creditor's

claim.  He is instead reducing the amount of payments "on the creditor's secured claim from the

amount stated in the original plan down to zero, after surrender of the collateral."  *In re Leuellen*,

322 B.R. 648, 654 (S.D. Ind. 2005).

### b.  11 U.S.C. § 1329(a)(3)

Another type of modification that is expressly permitted by § 1329(a) is the alteration of

"the amount of the distribution to a creditor whose claim is provided for by the plan to the extent

necessary to take account of any payment of such claim other than under the plan[.]" 11 U.S.C. §

1329(a)(3).  Modifying a plan to change the amount of payment to a secured creditor when it

receives its collateral – or the insurance proceeds from its collateral – is permitted.  This type of

modification complies with § 1322(b)(8) and § 1325(a)(5), as required by § 1329(b).

Section 1329(a)(3) does not distinguish between secured and unsecured creditors when it

allows this type of modification.  The Bankruptcy Code defines a "creditor" as an "entity that has

a claim against the debtor that arose at the time of or before the order for relief concerning the

debtor[.]" 11 U.S.C. § 101(10)(A).  Congress could have chosen to limit this type of

modification to unsecured creditors, just as it limited the power to seek modification to

unsecured creditors, but it did not.

### 2.  Surrender satisfies § 1329(b)

Section 1329(b)(1) states that certain provisions of the Bankruptcy Code apply to

modifications of a confirmed plan.  Several of these provisions contemplate a modification that

involves surrender of a secured creditor's collateral.

### a.   11 U.S.C. § 1322(b)(8)

Section 1322 governs the content of a chapter 13 plan, and subsection (b) provides that a plan may accomplish certain results.  Found within § 1322(b) is subsection (b)(8), which states that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor[.]" This subsection, which applies to proposed modifications, "contemplates surrender of collateral as a form of payment[.]" *Leuellen*, 322 B.R. at 652.

### b.   11 U.S.C. § 1325(a)(5)(C)

Another section of the Bankruptcy Code that is applicable to proposed modifications is § 1325(a).  Found within § 1325(a) is subsection (a)(5), which provides three options for treatment of allowed secured claims.  At least one of these options must be chosen in order to propose a plan that complies with § 1325(a).  *See Leuellen*, 322 B.R. at 653 ("One of its three alternatives must be satisfied or there is no confirmation.").  The third option, in § 1325(a)(5)(C), states that a plan shall be confirmed if "with respect to each allowed secured claim provided for by the plan … the debtor surrenders the property securing such claim to such holder."

"Accordingly, Congress's explicit incorporation of section 1322(b) and section 1325(a) into the standards for post-confirmation modification under section 1329(a) makes clear that Chapter 13 debtors retain the option to seek court permission to modify a confirmed plan by surrendering collateral to pay a secured claim." *Leuellen*, 322 B.R. at 653.

### c.   11 U.S.C. § 1323(c)

Although § 1323(c) is part of a section titled "Modification of plan before confirmation," it is applicable to post-confirmation modifications through the operation of § 1329(b)(1).  *See In re Hutchison*, 449 B.R. 403, 408 (Bankr. W.D. Mo. 2011) ("While by its terms, it refers only to

11

modifications made before confirmation, it is also made applicable to post-confirmation

modifications by specific reference in § 1329(b)(1).”).  Section 1323(c) states:

> Any holder of a secured claim that has accepted or rejected the plan is deemed to
> have accepted or rejected, as the case may be, the plan as modified, unless the
> modification provides for a change in the rights of such holder from what such
> rights were under the plan before modification, and such holder changes such
> holder’s previous acceptance or rejection.

Therefore, a change in the rights of a holder of a secured claim through a plan modification is

expressly contemplated by the Bankruptcy Code.

### 3.   The minority view does not reconcile all applicable provisions of the Code

The minority line of cases, which would prohibit a plan modification that provides for

surrender of a secured creditor’s collateral, is most often represented by the Sixth Circuit’s *Nolan*

decision.  232 F.3d 528.  *Nolan* is not binding authority on this court, and the court respectfully

finds that its reasoning is not persuasive.  Section 1329 permits surrender.

### a.   The court respectfully declines to follow *Nolan* and the minority view

The *Nolan* panel found “[f]ive fundamental deficiencies” with the majority’s position.

*Id.* at 532.  The court will address each.

### i.   “[S]ection 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim.”  *Nolan*, 232 F.3d at 532.

The *Nolan* panel looked to the list of permitted types of modifications in § 1329(a) and

determined that § 1329(a)(1) allowed only the “right to request alteration of the amount or timing

of specific payments.”  *Id.*  This is not an accurate rephrasing of § 1329(a)(1).  The plain

language of that section permits a modification that will “increase or reduce the amount of

payments on claims of a particular class provided for by the plan[.]” Each secured claim is

typically treated as its own class.  *See* Keith M. Lundin, Lundin on Chapter 13, § 74.7, at ¶ 1 (“It

12

is usually true that the collateral securing each secured claim is unique. The courts have long recognized that each secured claim can be placed in a separate class.") (footnote omitted).

A modification that involves surrender of collateral results in a reduction of the amount of payments on the secured claim in that class, from the amount stated in the plan to zero. *See In re Tucker*, 500 B.R. 457, 462 (Bankr. N.D. Miss. 2013) ("Therefore, a modification to surrender collateral that reduces the stream of payments to a secured creditor to zero falls within the language of § 1329(a)(1)."). *Nolan's* theory that § 1329(a)(1) provides only the right to seek alteration of the amount or timing of payments is an "artificial restriction within § 1329(a)…. Instead, § 1329(a) merely mandates that any one of four separate requirements be met, and nothing more." *In re Scarver*, 555 B.R. 822, 834 (Bankr. M.D. Ala. 2016). Moreover, that theory ignores the specific statutory tools provided to debtors in § 1329(b)(1).

The *Nolan* court also suggests that allowing the debtor to alter, reduce or reclassify a previously allowed secured claim "would add a claim to the class of unsecured creditors[.]" *Nolan*, 232 F.3d at 532. This is not accurate either. In this case, for example, Finance already has an unsecured claim, according to both its proof of claim and its treatment in section 3.2 of the Amended Plan.[4]

The *Nolan* panel also cautions that "[s]ection 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." *Id.* at 533. This caution "does not fully consider the relationship between the Code provisions governing plan confirmation and claims allowance." *In re Sellers*, 409 B.R. 820, 827 (Bankr. W.D. La. 2009). In this case, Finance already holds a secured claim and an unsecured claim. Debtor's proposed modification works as a

---

[4] Section 506 of the Bankruptcy Code describes the determination of the secured status of a creditor. According to § 506(a), a creditor is secured "only to the extent of the value of the collateral; its claim over and above the value of the [collateral is] unsecured." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 956 (1997). *See* 11 U.S.C. § 506(a). The deficiency remaining after surrender – if any – is treated as an unsecured claim.

13

reconsideration of Finance's claim, as allowed at any time according to § 502(j) and Fed. R. Bankr. P. 3008. "The reconsideration and reclassification of secured claims provides a basis for a modification to surrender collateral under § 1329." *Tucker*, 500 B.R. at 461. Moreover, to prohibit such a reconsideration would be to read § 1329 in isolation, rather than as it should be read, in conjunction with other rights and powers granted by the Bankruptcy Code.

Finally, § 1329(a)(3) expressly allows for the alteration of "the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan." When collateral is surrendered, there is a payment of the claim other than under the plan. When a plan modification provides for surrender of collateral, "the creditor is deemed to receive full payment of its secured claim, and any deficiency is treated as unsecured under the plan." *In re Fayson*, 573 B.R. 531, 537 (Bankr. D. Del. 2017).

> ii. **"[T]he proposed modification would violate section 1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed." *Nolan*, 232 F.3d at 533 (footnote omitted).**

The *Nolan* panel characterized the proposed modification as an attempt to bifurcate a fully secured claim into a claim with both a secured and an unsecured component. This is not an issue in our case. Finance already filed a proof of claim that asserted both a secured claim and an unsecured claim, because the value of the 2015 Malibu was less than the amount Debtor owed to Finance.

Furthermore, the court disagrees with the conclusion that once a debtor has chosen one of the three options in § 1325(a)(5) for treating a secured creditor's claim, it is bound by that choice for the duration of his case.

> That the debtor is given the option to surrender prior to confirmation does not
> establish that she retains this right after confirmation when the collateral has

14

significantly depreciated. Section 1325(a)(5)(C), read in conjunction with sections 1325(a)(5)(A) and (B) and 1325(a)(6), clearly permits only *pre-confirmation* surrenders. Once the plan is confirmed, it is impermissible to assert a continued option to surrender during the life of the plan.

*Nolan*, 232 F.3d at 533, n.9.

"With due respect to the *Nolan* panel, this conclusion is not supported by the text of section 1329[.]" *Sellers*, 409 B.R. at 827. Section 1325(a)(5) is unique among the requirements of § 1325(a) in that it provides the debtor, as plan proponent, with a choice of how to treat secured creditors. But there is no statutory foundation for concluding that once that choice is made, the debtor cannot change it with a post-confirmation plan modification that otherwise complies with the Bankruptcy Code.

In fact, § 1329(b)'s express application of two Code sections to plan modifications undercuts *Nolan's* conclusion that the treatment of a secured creditor is fixed at confirmation. The first of these is § 1325(a). Since § 1329(b) makes the requirements of § 1325(a) applicable to plan modifications, its subsection § 1325(a)(5) applies, and the proponent of the plan modification must be sure that his proposal complies with that subsection. Choosing surrender of a secured creditor's collateral is one of the three options available for compliance.

The second Code section is § 1323(c). The plain language of § 1323(c) contemplates "a change in the rights of such holder [of a secured claim] from what such rights were under the plan before modification[.]" This language would be superfluous if the rights of a holder of a secured claim were fixed at confirmation and could not be changed by a plan modification. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotation omitted).

15

      iii.    **To allow this modification "postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset."** *Nolan*, **232 F.3d at 533.**

With all due respect, the *Nolan* panel presents an unrealistic view of the leverage provided by section 1329 and its benefit to debtors by suggesting that debtors would subject secured creditors "to their whims throughout the life of the plan…. There is no indication that Congress intended to allow debtors to reap a windfall by employing a subterfuge that unfairly shifts away depreciation, deficiency, and risk voluntarily assumed by the debtor through her confirmation of the Chapter 13 plan." *Id.* at 534 (footnote omitted).

If Congress intended to bind chapter 13 debtors to their confirmed plan through the duration of the plan term without any opportunity to address the changes that might occur in their circumstances over the course of three to five years, it would never have enacted § 1329 in the first place.[5] Nor would it have allowed chapter 13 debtors the nearly absolute right to dismiss their case, at any time and for any reason (or for no reason at all). *See* 11 U.S.C. § 1307(b) ("On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable."). And Congress would not have provided

---

[5] As one court wrote:

> There is never any money built into a chapter 13 budget for a vacation or car repairs. Who can live like that for five years without some flexibility? The answer is that most debtors cannot. And the Bankruptcy Code recognizes this. It allows debtors to come back to the court to modify the plan when life's unexpected events upset the carefully crafted repayment plan that seemed so "do-able" at the time of confirmation. Section 1329 was Congress' answer to this problem.

*In re Kinney*, No. BR 13-27912 EEB, 2019 WL 7938816, at *5 (Bankr. D. Colo. Nov. 22, 2019), *aff'd*, 5 F.4th 1136 (10th Cir. 2021), *cert. denied*, 143 S. Ct. 302 (2022).

debtors with the (admittedly limited) escape hatch in § 1328(b), colloquially known as a "hardship discharge."

Moreover, *Nolan's* theory ignores the requirement of § 1325(a)(3) that all original and modified plans must be "proposed in good faith and not by any means forbidden by law." A chapter 13 debtor who is acting according to their "whims" will be barred from modification by the good faith requirement, not by the construction of a barrier that Congress never intended to be built. Here, the Debtor submitted an affidavit and police report establishing the circumstances giving rise to the Motion to Modify. The proposed modification is made in good faith.

        **iv.**     **Allowing this type of modification "would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*." *Nolan*, 232 F.3d at 534.**

*Nolan* suggests that because only the debtor, the chapter 13 trustee and unsecured creditors can file a motion to modify, it is unfair to allow modification when collateral depreciates because secured creditors cannot seek modification when collateral appreciates. Even assuming that a creditor who is regularly receiving payments under a confirmed chapter 13 plan might wish to upset the debtor's delicately balanced budget to wring free a few more dollars each month, this concern is a straw man. Or as another court wrote, "[t]hat is simply wrong." *Scarver*, 555 B.R. at 834. An undersecured creditor, by its very name, holds both a secured and an unsecured claim. Holders of unsecured claims are permitted to seek modification of confirmed plans. "The only type of creditor who does not have standing to modify a plan under § 1329 is one who is fully secured, and a fully secured creditor would have no reason to modify the plan if the collateral appreciates because its claim is already being paid in full." *Scarver*, 555 B.R. at 835. Even if it had a reason to seek modification, the Code provides that secured

17

creditors must object to valuation prior to confirmation, and then live with "its procedural choice" afterward. *Matter of Pence*, 905 F.2d 1107, 1110 (7th Cir. 1990).

As the Supreme Court acknowledged in a slightly different context, "§ 1325 contains a number of provisions to protect creditors…. Given the presence of multiple creditor-specific protections, it is by no means irrational to assume that Congress opted not to provide further protection for creditors[.]" *Till v. SCS Credit Corp.*, 541 U.S. 465, 489-90 (2004) (Thomas, J., concurring). This court interprets the Bankruptcy Code based on its plain language, "rather than amorphous notions of equity[.]" *In re Toliver*, 603 B.R. 420, 423 (Bankr. E.D. Wis. 2019). *See Sunbeam Prod., Inc. v. Chicago Am. Mfg., LLC*, 686 F.3d 372, 376 (7th Cir. 2012) ("Rights depend … on what the Code provides rather than on notions of equity."). The plain language of the Code allows for a plan modification that provides for surrender of a secured creditor's collateral, regardless of one's subjective views of the equities.

> **v.    "[S]ection 1329 clearly indicates that modifications after plan confirmation cannot alter a *claim* (a right to a remedy or payment of a certain total amount), but can extend or compress payments and reduce or increase the *amount* of the delivery of value planned as an eventual satisfaction for the creditor's claim." *Nolan*, 232 F.3d at 535 (footnote omitted).**

Under this theory, the *Nolan* panel suggests that § 1329(a) prohibits certain types of modifications. The statute does not operate in this manner. "[A]gain, § 1329(a)(1) does not prohibit anything." *Scarver*, 555 B.R. at 834. Instead, § 1329(a)(1) allows plan proponents to seek approval of modified plans that "increase or reduce the amount of payments on claims of a particular class provided for by the plan[.]" However the modified plan affects the claim in achieving that increase or reduction "is irrelevant in determining whether the literal language of § 1329(a)(1) has been satisfied." *Scarver*, 555 B.R. at 834.

18

If the proposed modification fits within § 1329(a)(1) or (a)(3), and complies with the other requirements of the Bankruptcy Code, it is a permissible modification. This includes a modification that recognizes the surrender of a secured creditor's collateral and accordingly both reduces the creditor's secured claim to zero and continues to treat the deficiency amount as an unsecured claim. *Fayson*, 573 B.R. at 536-37.

### b. Case law in this district that follows *Nolan* is not persuasive

Two published decisions in the Northern District of Illinois found that a plan modification that contemplates surrender cannot be approved. In *In re Arguin*, the chapter 13 debtors sought to modify their plan to surrender a car that no longer worked. 345 B.R. 876 (Bankr. N.D. Ill. 2006). The *Arguin* court noted that then, as now, there was no binding Seventh Circuit authority on point. In light of this vacuum, *Arguin* looked to the Seventh Circuit's direction to give "great weight to the binding effects of Chapter 13 confirmation orders" as well as its holding that secured claims treated in a confirmed chapter 13 plan "cannot be attacked later as to the secured value[,]" and determined that it could not revisit or revise the amount of the creditor's secured claim. In doing so, *Arguin* agreed with an earlier opinion from this district, *In re Adams*, 270 B.R. 263 (Bankr. N.D. Ill. 2001). The *Adams* court dismissed the use of § 1329 "to modify a confirmed plan by surrendering the collateral to a secured creditor and bifurcating that creditor's claim to the present value of collateral[,]" *id.* at 270, and ruled on Debtor's motion to disallow a secured claim filed post-confirmation.

With all due respect, this court disagrees with the conclusions in *Arguin* and *Adams*. *Arguin* did not analyze the Code provisions that allow modification, instead focusing on the binding nature of a confirmed plan and holding that chapter 13 debtors "are collaterally estopped from using §§ 502(j) or 506(a)[.]" 345 B.R. at 881 (citing cases for the proposition that the value

19

of the collateral cannot be corrected after confirmation.  Here, the proposed modification does not challenge the value of the collateral.).  *Adams'* reliance on *Nolan* in concluding that § 1329 does not permit this type of modification similarly lacked a full analysis of the Code provisions relevant to modification of a plan.

First, 11 U.S.C. § 1327(a) states that confirmation binds the debtor and each creditor, and the Seventh Circuit has instructed us that it favors the finality of confirmation.  *See Harvey*, 213 F.3d at 321 ("Bringing the various creditors' interests to the table once is difficult enough; permitting one of the creditors to launch a later attack on a confirmed plan would destroy the balance of interests created in the initial proceedings.").  But the Bankruptcy Code and Rules specifically provide certain exceptions to that finality.  "[T]hat's the sense in which a confirmed plan is binding under § 1327(a). It cannot be collaterally attacked, and must be obeyed, but like other kinds of judicial orders it may be *revisited and changed through authorized means*."  *Matter of Terrell*, 39 F.4th 888, 890 (7th Cir. 2022) (citation omitted) (emphasis added).  Those authorized means include § 1329, the express or implied consent of the parties, Fed. R. Civ. P. 60 (made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024) and reconsideration of claims under § 502(j).

Nor do principles of preclusion prevent debtors from modifying their plans.  "*Res judicata* does not bar such modifications by the debtor; the debtor often could achieve the same result by dismissing the case and filing a new chapter 13 case."  Collier on Bankruptcy, ¶ 1329.02 (footnote omitted).  *See Witkowski*, 16 F.3d at 745 ("[I]f the plain language of the statute makes it clear that res judicata does not apply, it is sufficient….  [T]he statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed.").

Finally, as set forth in section B.3.a.i., modification by surrender does not revalue the claim under § 1329. The collateral and thus the secured claim was valued under section 3.2 of the plan, bifurcating it into two claims – a secured claim and an unsecured claim. The valuation is not challenged by the modification. The proposed modification simply alters the amount of the distribution to the secured claim to take into account the vehicle surrendered outside of the plan, reclassifies the claim under the plan as unsecured, and permits continued treatment of the deficiency amount as an unsecured claim.[6] *See* § 1329(a)(1) and (a)(3). Even if a claim has been allowed and is treated in a plan,[7] that allowance may be reconsidered when cause exists to do so. Section 502 governs the allowance of claims or interests in a bankruptcy case, and within that provision § 502(j) states that a "claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). "Cause is found when the collateral securing a claim is surrendered." *Fayson*, 573 B.R. at 535.[8]

**C. The Debtor's proposed modified plan satisfies the requirements of § 1329**

Finance filed a proof of claim that has both a secured and an unsecured component. Debtor's confirmed plan treats the claim in section 3.2, addressing both the secured and the unsecured portions of Finance's claim. Debtor now seeks to modify his plan to change Finance's treatment under § 1325(a)(5). Instead of providing Finance with a stream of payments that would satisfy § 1325(a)(5)(B), he intends to surrender the collateral that secures Finance's claim,

---

[6] *See* footnote 4, *supra*.

[7] Only those creditors whose claims are allowed will receive distributions under a confirmed plan. Fed. R. Bankr. P. 3021.

[8] The availability of reconsideration is not cut off by confirmation of a plan. *See In re Zieder*, 263 B.R. 114, 117 (Bankr. D. Ariz. 2001) ("[L]iquidation of the collateral by the secured creditor is adequate cause to reconsider a previously allowed secured claim, even after confirmation of the … chapter 13 plan and commencement of payments."). When there is no longer any collateral securing a claim, § 506(a) operates to make the entire claim an unsecured claim.

thus satisfying § 1325(a)(5)(C). Proper notice was given and the secured creditor did not object. *See Espinosa*, 559 U.S. at 275; Fed. R. Bankr. P. 3015.

Since this proposed modification would reduce the amount of payments on claims of a particular class, it is a permitted modification under § 1329(a)(1). Alternatively, this proposed modification would alter the amount of the distribution to Finance to the extent necessary to take account of the surrender of its collateral, which is a payment of its claim other than under the plan. Therefore, this is also a permitted modification under § 1329(a)(3).

## IV.   CONCLUSION

In the Motion to Modify, Debtor seeks to modify his confirmed plan so that he may surrender his stolen vehicle. The court has already granted Debtor's Credit Motion, authorizing him to purchase a replacement car. The Trustee objected to the relief sought in the Motion to Modify, relying on *Nolan* and the decisions that follow its minority view.

Having read the papers, heard the arguments of the parties, reviewed the case law and applied the law to these facts, the court finds that the requested modification is permissible. This court declines to adopt the reasoning of the *Nolan* decision, instead holding that modification of a confirmed plan which changes the treatment of a secured creditor from a stream of payments to surrender of collateral is permissible. For the reasons stated in this Memorandum Opinion, the Motion to Modify will be granted by separate order.

Date:   November 27, 2023

_____
DAVID D. CLEARY
United States Bankruptcy Judge

22